EMELINE COY, ADMINISTATRIX, &c., APPELLANT, vs. MARK W. DOWNIE, ET AL., RESPONDENTS.

1. When, upon the whole case, it appears that a decree is prejudicial to the interests of both parties, this court may reverse it upon grounds other than those upon which a reversal is claimed.

2. An order for the sale of the interests of infants in real estate is inoperative, and the deed thereunder is void, unless the provisions of the

Coy. Adm'x, v. Downie et al.

law have been complied with, so as to give the court or judge juris-diction of the proceedings under which the order is made.

3. Where a mortgage for purchase money is sought to be foreclosed, and the deed of the premises contained covenants, the mortgagor may resist the foreclosure by a recoupment or offset of damages for a breach of the covenants, to the extent of the damages sustained, for a failure or partial failure of title, or any other matter embraced in the covenants.

4. Where a mortgage was executed and delivered to a third person, to be held by him until certain essential conditions were complied with by the complainant, for whose benefit the mortgage was executed, a decree of foreclosure should not be made until the conditions are complied with.

5. Where there is an express covenant in a lease to pay rent, the loss by the lessee of the use of the premises by means of the casualties of war will not excuse the payment of the rent, unless such casual-ties be expressly provided against in the lease.

Appeal from the Circuit Court, Fourth Judicial Circuit, Nassau County.

This is a suit brought in May, 1873, by Emeline Coy, administratrix of the estate of Amaziah Coy, deceased, for the foreclosure of a mortgage.

On February 21, 1866, Emeline Coy, administratrix, Caroline Dupray and Amelia Creighten, (with W. H. Du-pray, husband of Caroline,) sold and conveyed by deed of warranty of title in fee simple, with usual covenants of seisin, &c., with a covenant to execute such further con-veyance as might be required, to John M. Payne, lots 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, in block 15, in Fer-nandina, county of Nassau, for the consideration of $10,000. Of this sum, $5,510 was paid down, and for the balance John M. Payne gave his note, payable in two years, with eight per cent. interest, secured by mortgage upon said lots.

The bill alleges the non-payment of the note and inter-est, and that John M. Payne has conveyed the lots to Celia B. and Susan L. Payne and Mrs. Downie; that A. H. Cole has a claim or interest in lots 8 and 9 for the original pur-

chase money, and that E. N. Dickerson has a claim or interest in lots 15 to 18 for purchase money. The bill prays that defendants Payne and his grantees pay the note, or that the property be sold to pay plaintiff's claim, and all other demands upon the property; that the priority of claims be ascertained, and other relief.

*John M. Payne* and his grantees answer, setting out the sale and conveyance of the lots and the covenants of seisin, warranty, &c., and say that as to lots 15, 16, 17 and 18, the plaintiffs had no title, but only an assignment of a lease thereof for ninety-nine years from the trustees of the Florida rail-road company, dated 7th November, 1856, subject to an annual rent, and with the privilege of purchasing at $200 each, and that they had become forfeited by failure to pay the rent at the time of the conveyance and mortgage; and that lots 8 and 9 were not the property of Amaziah Coy or his heirs, but were the property of A. H. Cole. That by the failure of title to these six lots, the remaining lots and property (a hotel and appurtenances,) were greatly reduced in value, and they have suffered great damage thereby; that the lots had been sold for the U. S. direct taxes, and at the time of conveyance and mortgage were in the possession of the tax purchasers, and defendant Payne lost the use of the premises some six months before he could obtain possession, to his damage $3,000; that the consideration of the note had wholly failed; that the said damages should be set off against the note; that A. H. Cole was the owner of lots 8 and 9, of which fact Payne was ignorant until many months after the purchase by him, and Cole is still the owner; that Dickerson, the assignee of the Florida R. R. Co., owns the lots 15 to 18, and since the forfeiture has leased them to Downie and Riddell for a term of years.

*A. H. Cole* answers that he is the owner of lots 8 and 9, and had agreed to sell the same to plaintiff for $1,000, and had executed a deed, which was deposited with J. P. San--

derson, to be delivered on payment of that sum, and is willing to deliver the deed on payment of that sum, interest and his costs.

*Edward N. Dickerson* answers that lots 15 to 18 were leased with other lots to F. L. Dancy for 99 years, at an annual rent, that a large sum remained unpaid, that the taxes remaining unpaid the lots had been sold for taxes, and defendant had redeemed the same, and had taken possession of the lots as forfeited under the terms of the lease. He asks for judgment for the rent unpaid, and for taxes paid by him, &c.

The plaintiff filed a special replication to the answer of Payne, in which she alleges that she, with Caroline Dupray and Amelia Creighton, as heirs-at-law of Amaziah Coy, conveyed to J. M. Payne all their title and interest in the lots and property, and that before the deed was delivered, it was understood that lots 15 to 18 were leased lots and an indorsement to that effect was made upon the deed, and Payne agreed to pay the rent and comply with the terms of the lease. That it was understood also that plaintiff was guardian of Henry, Emeline, John, Caroline and James Mattair, who were infant children of a daughter of Amaziah Coy, and heirs in her right in the property, and that plaintiff, as guardian, should apply to the Circuit Court of Nassau county, and obtain leave to sell and convey their interest ; that the note and mortgage and suit were executed to and in the name of Joseph Finegan, to be held by him until a deed could be obtained of the interest of the minor heirs of Amaziah Coy, all which was agreed to by all the parties. That the order for a deed of the interest of the minor heirs was obtained March 6, 1867, and December 2, 1867, plaintiff as guardian executed the conveyance to John M. Payne, a copy of which order and deed are annexed as exhibits. That upon the execution and delivery of this deed, the mortgage was assigned to her by Finegan, whereupon Payne agreed to pay the note at maturity.

Coy, Adm'x, v. Downie et al.

That the leased lots have not been forfeited by any act of hers to pay rent or taxes. That defendants are still in possession under the deed; that lots 8 and 9 were at the time of the sale to Payne the property of the grantors by virtue of possession under the statute of limitations; denies the alleged depreciation in value, and denies that Payne was delayed in obtaining possession, or suffered damage; denies the failure of the consideration.

The exhibits attached to this reply are the deed of plaintiff to John M. Payne.

2. The lease for ninety-nine years, dated November 7, 1856, to F. L. Dancy, for eight lots, including lots 15 to 18, at the rent of $128 per annum in advance, with option of taking a deed on payment of all rents, and $1,600 for the eight lots, right of re-entry in case of non-payment of rent, &c., assigned to Joseph Finegan December 24, 1859, as to lots 15, 16, 17 and 18, and by Finegan assigned to Amaziah Coy.

3. An order of Judge Long, dated March 6, 1867, approving and confirming a sale of the interest of the minor heirs, entered of record in Fall Term, 1867, in Nassau county.

4. A guardian's deed, dated December 2, 1867.

5. Assignment of mortgage by Finegan to plaintiff.

The plaintiff replies to the answer of A. H. Cole, alleging and claiming title by occupancy and enclosure of lots 8 and 9 since 1861, whereby she claims title. Admits also that the purchase money has not been paid to Cole, to-wit, $200 for each lot, and interest thereon at six per cent., making $712, and denies that she agreed to Cole $1,000 for the lots.

Testimony was taken before referee, which was reported to the court, upon which the court made a decree. His findings and decree are as follows:

1. That the title to lots 8 and 9 is in A. H. Cole, and was not in the grantors at the date of their deed.

Coy, Adm'x, v. Downie et al.

2. That the title to lots 15, 16, 17 and 18 was not in the grantors at the date of their deed, but that they had a leasehold interest for 99 years only, and that it does not appear that such interest was worth more than the rent reserved.

3. That the title to lots 10, 11, 12, 13 and 14 was in the grantors.

4. That the mortgage covers the grantors' interest in lots 10 to 14 and the leasehold interest in lots 15 to 18.

5. That the damages sustained by defendant Payne by reason of the failure of the title in lots 8, 9, 10, 15, 16, 17 and 18, at the time of the sale, was $2,400.

6. That Payne sustained damages to the amount of $1,050 in consequence of not being able to obtain possession of the premises.

7. That there was justly and lawfully due the plaintiff from John M. Payne, upon the note mentioned in the complaint, the sum of $1,040, with interest from the date of note.

8. The court decrees that the lots numbered 10 to 18 be sold to pay the same.

9. That the sheriff pay out of the proceeds, after paying the expenses of the sale, the rent due on the lease to the date of plaintiff's deed to Payne, excepting the rent for such time as the property could not be used and enjoyed by Coy and his heirs by reason of the presence of troops of the enemies of the United States.

10. That the sheriff pay the costs of this suit out of the proceeds of sale.

11. That the sheriff pay the amount found due on the note and mortgage, viz : $1,040, to the plaintiff, less the several sums above ordered to be paid for costs and ground rents.

12. That the sheriff pay out of the proceeds to the lessors of the leased lots the ground rent from the date of the deed

to Payne up to the day of sale, and the balance of the proceeds, if any, to the grantors of John M. Payne.

13. If the proceeds of sale be insufficient to pay the sums specified and ordered to be paid, the sheriff shall specify the amount in his report and that John M. Payne pay the same to the party declared entitled thereto.

*Friend & Hammond* and *A. A. Knight* for Appellant.

Under date of February 21, 1866, Emeline Coy, Caroline Dupray and Amelia Creighton, as heirs of Amaziah Coy, Sr., deceased, sold to John M. Payne lots 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, in block 15, in the city of Fernandina, for ten thousand dollars, executing and delivering a usual warranty deed for the property.

The negotiations of this sale, the delivery of the papers and the receiving of the purchase money were made by Joseph Finegan, who had an interest in the property by way of a mortgage from Amaziah Coy. As such Finegan acted under a verbal special authority to negotiate the sale. This special authority to negotiate a sale does not extend to contract.

Payne paid $5,510 down at the delivery of the deed on the 21st of February, 1866, and gave his note of $4,490 for the balance, payable in two years, and secured the payment thereof by the mortgage in controversy. This note and mortgage was made to Joseph Finegan, instead of to the grantors of said deed, but was assigned to the plaintiff before due.

Under the covenant of the deed to make such other and further deeds as may be found to be necessary, the plaintiff, as guardian of the minor heirs, (the Mattair children,) obtained an order of the Circuit Court to approve of the sale of the Coy property to Payne in behalf of said minor children, and made a guardian deed for said property to Payne.

The delivery of this deed by the guardian to Joseph Finegan, and the recording thereof, is a good delivery. 4 Kent's

Com., 454. On the execution and delivery of the deed to Payne on the 21st February, 1866, the following additional papers were delivered to John M. Payne, viz: the original lease from Trustees of the Florida Railroad Company to Francis L. Dancy for lots 15, 16, 17 and 18, duly assigned to A. Coy, Sr., and Payne had it recorded while in his possession. At the same time the original deed from the Trustees of the Florida Railroad Company for lots 10, 11, 12, 13 and 14 to Amaziah Coy, in fee simple, was also delivered to Payne, and at the same time the redemption certificates for lots 8 to 18 inclusive were also delivered to Payne; all of which clearly showed to John M. Payne what kind of title he had received, viz:

1. A fee simple title for lots 8, 9, 10, 11, 12, 13 and 14.

2. A possessory title, or 99 years leasehold, with a covenant to purchase the fee, of lots 15, 16, 17 and 18.

3. The redemption of all and singular the premises from the forfeiture and sale of the property by the United States.

John M. Payne paid part of the purchase money and refuses to pay the balance of $4,490. Suit was brought to recover this amount, and this suit is against several defendants, viz: Against John M. Payne as the mortgagor, and Mark W. Downie and wife, Celia B. and Susan L. Payne as the present owners and holders of the property under John M. Payne.

A. H. Cole claims an interest in lots 8 and 9 for amount due him for original purchase money, viz: $1,000.

Edward N. Dickerson claims lease lots 15, 16, 17 and 18 as assignee of the Trustees of the Florida Railroad Company and the rent under the lease, and against Samuel T. Riddell as tenant. Mr. Riddell does not answer; his rights are therefore admitted to be subservient to the plaintiff's mortgage.

The testimony showeth no *duress*—no imposition or destruction of Payne's free agency—no *fraud*, whether by misrepresentation, concealment or trick, employed by the

plaintiff towards Payne to lead him into error or to make an agreement contrary to his interest—no *cheat*, no malicious contrivance nor false suggestion, not even to impair the true value or price of the property; not even a hard contract.

The testimony of Mr. Kœrner, the land agent in Fernandina, who has charge of the lease lots and sells property, shows :

| | |
|---|---:|
| The value of lots 8 and 9, without improvements, | $1,000 |
| Lots 10, 11, 12, 13 and 14, with improvements, | 9,000 |
| Lots 15, 16, 17 and 18, | 2,400 |
| In all, | $12,400 |

In 1866, these premises were valued about the same. Lots then were worth less, but the improvements worth more. Samuel T. Riddell finds the value about the same. As to fraud, see 1 Sto. Eq., secs. 208, 221, 222, 244, 245 and 246.

The agreement between Joseph Finegan and John M. Payne, entered into at Jacksonville under date of January 25, 1866, is not an agreement between the grantors and Payne. It does not stipulate any particular property, except the Coy hotel; and all the relation it has to the case at bar is that nothing else was expected than the interest of Mrs. Coy and her children.

Finegan had no authorized agency, and certainly there is no evidence as to prior authority given on subsequent assent or approval by the grantors. See 2 Kent's Com., 614 or 815, new ed.

Even if there would have been some binding force in the original memorandum, as a contract, it became waived, annulled, dissolved and given up by the new contract made and consummated on the 21st February, 1866. See Chitty on Con., 115.

Under the new contract, not only the Coy hotel property, standing on lots 10, 11, 12, 13 and 14, but lots 8 and 9, joining the hotel property south, and lease lots 15, 16, 17

and 18, joining east, were added; the redemption, further and more time was given; in short, a new solemn contract was made by deeds and covenants.

The mortgagor, John M. Payne and his vendees, sisters, under him therefore are estopped from denying their *seisin* in the property on this foreclosure suit. 6 How., 284; Humph. 502; 7 How., 133; 2 Black 500 and 508; 3 Wash. on Real Prop., 219, 99; Brightly's Fed. Dig., 360, n. 70, 357, n. 10, 290, n. 250, 251, 742, n. 2, 746, n. 111.

As to lots 15, 16, 17 and 18, they were conveyed to Payne as 99 years leasehold, with a covenant to purchase the fee simple title, and so expressed by the deed made and delivered on the 21st day of February, 1866, by an endorsement on the deed. Payne received the property as such with his knowledge and consent as a part of the bargain. A deed thus made and delivered is a good deed and the endorsement is a part thereof. 1 Starkie, 130; Jacob's Law Dic. Title Deed; 3 ib., Title End.; Stewart vs. Preston, 1 Fla.; 1 Bouv. Inst., n. 730; Bouv. Law Dic., 262; and parol evidence is admissible to show what the grantor's interest in those lots were, 3 Wash. on Real Prop., 347; Bing. on Real Prop., 409, 427; 9 Fla., 503.

As to lots 8 and 9, the pleadings admit the sale thereof and right of property in Amaziah Coy, and by the testimony of Mr. Kœrner, Mrs. Coy redeemed them with the Hotel property, and Payne and his vendees, sisters, have held them under the deed of Emeline Coy, et al., ever since February 21, 1866, undisturbed, and now hold them under our title; they are therefore estopped from denying their title; query, has their title not become an absolute fee simple title by prescription? Livery of *seizin*, see Brown on Stat. of Fraud, secs. 465–486, 487–492; 2 Sto. Eq. Com., secs. 753, 754, 755, and as per statute sec. 1, chap. 142, laws 1848, and secs. 5 and 8, chap. 1,868, laws 1872.

And even if the vendors had not the title of these lots, and no right of property therein, they would be entitled to

reasonable time, (and the Court would so order) to procure it. (12 Pet., 264; 7 How., 284; 5 Cr. C. C. 485; or see Brightly's Fed. Dig., Dec., page 742, notes 1 and 2, title sale.) A. H. Cole, however, is in court, admitting the sale of the property to the grantors of John M. Payne, (see sec. 753, 2 Story Eq. Com., n. 2,) and only seeks the protection of the court in the payment of the purchase money, $1000, which the plaintiff claims to be only $300 a lot, viz: $600 for the two, with interest at the rate of six per cent. since 1860, deducting therefrom the interest abated during the late war. Cole's interest therefore in said lots is $600, and ten year's interests $360—total $960.

If Payne or his sisters had paid this to Cole, they might claim it as a proper set off on the mortgage.

As to forfeiture of the lease lots 15, 16, 17 and 18, there could be no forfeiture without judicial proceedings and office found (see 9 Wall. 426,) besides courts of equity never enforce forfeiture, but relieve against it, (see 1 Story Eq. Com., sec. 891; 2 ib., sec. 775 and 1,315.) The true condition of these lots between the plaintiff and the defendants in this action is as follows: They are 99 years leasehold, created November 7, 1856, at an annual rent of $16 each, or $64 for the four lots, with a covenant to purchase the fee at pleasure at $200 a lot. The ground rent was paid to November, 1860, that is up to the time Coy got them. From November, 1860, to November, 1866, six years, the plaintiff has to pay the ground rent, amounting to $384, abating 4 years war time, $254, leaving a balance for the plaintiff to pay of $128. If Payne had paid this, he might have a just set-off on the mortgage; as he has not paid it, it goes to E. N. Dickerson.

Since 1866, John M. Payne and his vendees, sisters, must pay the ground rent, viz: 8 years, amouning to $512; besides this there appears to be due defendant, Dickerson, for taxes and redemption money, $49.75, making an amount to be decreed to E. N. Dickerson from Payne, of $561.65.

The defendant's counter claim, therefore, on account of de-duction for the failure of title to six lots, falls to the ground, and more so since the said defendants have been in the un-disturbed enjoyment of said lots ever since 1866. The tes-timony of all the witnesses for the plaintiff and defendants shows that the defendants Payne have had the undisturbed possession and enjoyment of said premises.

As to the purported damage in obtaining possession, the evidence does not warrant and the law does not allow such claims. A legal point is that the purported counter claim was not in existence at the time the note and mortgage was given. Besides by the redemption of the property the pos-session became and was legally vested in the redemptor. (See act of Congress, June 6, 1862, sec. 7, 12 stat., 422 ; do. 13 stat. page 502, sec. 7,) and when the property was con-veyed to John M. Payne in February, 1866, he did not take immediate possession, but allowed the property to be occu-pied, not by the plaintiff and co-heirs of A. Coy, but by oth-er parties who held them tortiously. This tortious possession is no eviction, either actual or constructive ; no action there-fore will lie or does exist upon the covenant in the title. 2 Black, 500 and 507.

Payne knew of the condition of the property and the oc-cupancy thereof ; he left it until about the first of April and obtained possession in May by legal process against the par-ties whom he left in possession at the time of the purchase. And in June, 1866, he obtained full and complete possession ; and that Payne soon opened the hotel business after he got in possession appears from his own testimony. He received guests during the summer of 1866, and had his hotel in full operation on the first of January, 1867.

The claim for insurance is not well taken. He insured for his own benefit, and if he had burned out would have received the insurance money ; and if it had enured to the plaintiff's benefit it was a matter of agreement.

In short, every item of counter claim interposed by the

defendants falls to the ground from want of evidence to sustain them. The plaintiff, therefore, is entitled to the relief prayed for in the complaint, viz : the recovery of the whole amount of the martgage note, to-wit : $4,490, with eight per cent. interest thereon from February 21, 1866, amounting to date of decree, $2,875—total, $7,365.

From this amount the plaintiff has has to pay A. H. Cole, amount of purchase money for lots 8 and 9, $960, and E. N. Dickerson, ground rent, $128.

Besides this, E. N. Dickerson is entitled to recover from the defendants John M. Payne, or M. W. Downie and wife, and Celia B. and Susaŋ L. Payne, the amount of ground rent due since 1866, viz : $512, and for taxes paid, $49.75 ; total, $561.75.

And the decree of the court ought to have been that the said John M. Payne or Mark W. Downie and wife, and Celia B. and Susan L. Payne pay the said several sums of money, with costs of these proceedings under the statutes, and that in default of payment the mortgage premises be sold to pay the same, and that if any balance remain unpaid that execution issue against the said John M. Payne, for the balance.

And that upon the sale of the property, all rights, title and interest of the defendants in said property with the equity of redemption be barred and forever foreclosed.

*Cooper & Ledwith* for Respondents.

The following points of law growing out of the state of facts set forth in the record and authorities are cited in support of defendants legal position :

·Finegan was plaintiff's agent, even at the time of making the memorandum to sell the property to Payne for $8,000, and certainly afterwards in the transaction, and she is responsible for his acts, including his frauds, &c. ; and the equities which those acts and frauds furnish the defendants

are good matters of defence to this action. "*Qui facit per alium, facit per se.*" Thomp. Dig., 218.

But did it require a *written* power of attorney, or one under seal, to authorize him to negotiate the sale of real estate? See to the contrary 2 Kent, m. p. 614; Dunl. Paley's Agency, 159.

As to the power and authority of an agent to bind the principal, see Sto. on Agency, sec. 127 and notes, and sec. 443; Dunl. Paley's Agency, chap. 1, p. 1 and note, and pp. 5 and 8; 2 Kent, m. p. 613-14-15; 12 Fla., 340-41.

The principal cannot limit the authority of the agent by *private* instructions, so as to affect the rights of third parties dealing with said agent, whether the agency be general or special. Dunl. Paley's Agency, sec. 3, p. 8; 2 Kent, m. p. 621 and note.

Fraud and surprise vitiate contracts at law and in equity, and the party committing the fraud cannot take advantage of his wrong, on the principle that "he who seeks equity must do equity." 1 Sto. Eq., par. 64, e.

"Duress" will also vitiate contracts; not merely *physical* duress, but that which affects a contract obtained under unfair advantages and circumstances of hardship and grievance. 1 Bouv. Law Dic., tit. *Duress*; 5 Amer. Com. Law, p. 2, tit. *Duress*, citing Hardin's Ky. Rep., 605.

The second contract, to-wit: the one changing the consideration from $8,000 to $10,000, was obtained "under unfair advantages and circumstances of hardship and grievance."

The deed from plaintiff and other heirs of Coy, deceased, to John M. Payne conveys *all* of the lots in fee simple. A violation of a part is a violation of the whole contract, and the grantors cannot require performance on defendants' part until they complete their part of the contract. In other words, a contract is an entirety; bad in part, bad in whole. "The entire fulfillment of the promise by either is a con-

Coy, Adm'x, v. Downie et al.

dition precedent to the fulfillment of any part of the promise by the other." 1 Bouv. Law Dic., tit. Contracts, p. 356.

If, therefore, *any* of the lots embraced in said deed were not in fee simple, the grantors cannot enforce their part of the contract until they are in a condition to convey fee simple titles to the grantee in each and every lot included in the contract, and tender to do so. It is admitted that A. H. Cole was and still is the owner of two of the lots, whatever may be the controversy in reference to the ninety-nine year lease-lots, in consequence of the Finegan memorandum in the corner at the bottom of said deed.

What is the effect of said memorandum ? Parol testimony cannot be introduced to vary or contradict a written instrument, and instruments under *seal* cannot be impeached or defeated by anything of less solemnity. 9 Fla., 490; Roberts on Fraud, 8, 9, 10, &c. ; 1 Greenl. on Ev., 275, 276, 277, 300 ; Broome's Legal Maxims, 394, 595 ; 2 Kent, 556 ; 1 Bouv. Law Dic., tit. Defeasance, 445 ; 11 Mass., 30, 31, and particularly notes at bottom of pages.

The words of a grantor are taken strongest against him (if doubtful) and most favorable to the grantee. Broome's Legal Maxims, 440 and note ; 2 Kent, 556-57.

The books make exceptions in cases where ambiguities, either latent or patent, appear on the face or in the body of the deed. No such appear on the face or in the body of said deed. It is remarkably clear of and free from ambiguities of any kind.

The guardian's deed is a fraud and a nullity. Delivery is one of the requirements of a deed. Delivery here is denied, and *stands denied*, and even knowledge of its existence. 1 Black. Com., 397.

To complete a delivery, *acceptance* must take place. 1 Bouv. Law Dic., tit. Delivery, 452; 4 Fla., 359. Hence the guardian's deed to extinguish title of minors and convey the same to Payne has never been legally executed or delivered.

Coy, Adm'x, v. Downie et al.

There is nothing to show that the statutes of Florida, permitting guardians to convey real estate of minors, have been complied with. But the facts and circumstances of this case, in that connection, raised a strong presumption to the contrary. Among the irregularities is the want of advertisement prior to obtaining the order to sell. Thomp. Dig., 225; Act approved January 23, 1851, chap. 381, p. 129. The order or decree of court produced in evidence by the plaintiff is simply to confirm a sale *already made*, and was obtained a short time after the conveyance to Payne by the older heirs of Coy and long before the alleged execution of the deed by the guardian in behalf of the minors. Hence its reference must have been to *that* deed, and not to the subsequent alleged conveyance by the guardian. No recital appears in it that it had been made to appear to the court that proper advertisement had been made, &c. It is all totally irregular, and leaves the alleged grantee unsafe and unprotected as against the minors. 11 Fla., 71-2.

It purports to have been signed in the presence of J. P. Sanderson and T. T. Long, Judge, as witnesses, and acknowledged before T. T. Long, Judge of the Suwannee Circuit, for record. The testimony of Mrs. Coy, the plaintiff herself, is that they were all in Jacksonville, *Duval county*, that day, when all of the papers of that date were fixed up in the office of J. P. Sanderson, with Long and Finegan present. Long was not the Judge of the *Eastern Circuit*, and if acknowledged before him there, it was a fraud and a nullity and did not entitle the deed to record.

We are the only party that could be aggrieved by the judgment of the court, but we do not complain. The plaintiff has obtained all under the judgment she could possibly claim. We therefore respectfully ask the affirmance of the judgment, or, if reversed, it should only be to order the court below to dismiss plaintiff's complaint for want of equity.

RANDALL, C. J., delivered the opinion of the court.

If the decree in this case should be allowed to stand, it is evident that both parties must suffer, and it is for this reason, mainly, that we must reverse it upon grounds other than those urged by the appellant.

1. We agree with the Circuit Court that the title to lots eight and nine was, the date of the deed to John M. Payne, and still remains, in A. H. Cole. The grantors had only a naked possession under some agreement to purchase which had not been complied with by them. There was no evidence in the case showing what amount is due him for purchase money.

2. The title to lots 15, 16, 17 and 18, was not in the grantors, but the lots were held under a lease for 99 years, upon which the rent appears to be unpaid from 1859 or 1860. The lease stands assigned to Amaziah Coy, now deceased, and the grantors, Mrs. Coy, administratrix, and her two daughters, conveyed in terms the fee, but in fact and in law only their interest in the leasehold, with a covenant to make the title to the grantee. The interest of the minor heirs was not conveyed.

3. The court found that the title to lots 10, 11, 12, 13 and 14, was in the grantors, but to this we cannot agree. The infant heirs were seized of an undivided interest in the right of their mother, who was a daughter of Amaziah Coy, deceased, and this interest seems to be one-third of the estate, subject to the right of dower of the plaintiff, Emeline Coy, the widow.

It is assumed by the appellant that the guardian's deed under the order of the Judge of Suwannee Circuit, dated March 6, 1867, carries the interest of the infants. Upon examination of that order it does not appear that proper proceedings were had to authorize the making of any order for the sale of their interest, nor does the order in its terms authorize a conveyance. So far as the record discloses the matter, the guar-

dian's deed is of no effect. The record should show that in the proceedings for the sale of the interest of infants in real property, the statutes were complied with.

4. The mortgage covers all the interest which the mortgagee had acquired in all the property.

5. The court found that the damages sustained by reason of the failure of the title to lots 8, 9, 15, 16, 17 and 18 was $2,400. We think the evidence is not sufficiently clear as to the value of those lots, in connection with the whole as a hotel property, and the rents in arrear upon the leased lots at the time of the conveyance to Payne, to warrant the finding of this precise amount. Further proof should be taken on this point.

6. The court found that Payne sustained damages, including expenses necessarily incurred, to the amount of $1,050 in consequence of his being unable to obtain possession of the property after his purchase. The proofs appear to sustain this finding, and it was proper to allow such damages for a breach of the covenants in the deed.

7. As to the finding of the court that there is $1,040 and interest due to the plaintiff, when we take into account that a proportion, (say one fourth,) of the property of the value of $10,000 belongs to the infant heirs, and that the mortgage was given upon the premise and hypothesis that the interest of the infant heirs was to be obtained and conveyed to the mortgagor, and this not appearing to have been accomplished so far as the record shows, there was absolutely nothing due upon the note and mortgage. The replication of the plaintiff to the answer of Payne, moreover, expressly states that the note and mortgage were executed to Joseph Finegan to be held by him until a deed could be obtained of the interest of the minor heirs of Amaziah Coy, and that this was agreed to by all parties and that they were assigned by Finegan to the plaintiff upon the making of the order by the judge of the Suwannee circuit, and the execution of the guardian's deed; but as it does not appear by the proofs con-

tained in the record that the guardian's deed conveyed the interest of the infants, the right to enforce the mortgage by a decree does not seem to have accrued.

The right of the defendant Payne and his grantees to resist the collection of a part or the whole of the purchase money of the premises, under the broken covenants in the deed, cannot be questioned, whatever appropriate offsets by way of recoupment or otherwise may exist in consequence of the failure of title to or possession of the whole or any part of the property, and under the express covenants of seisin of title in fee simple, of possession and quiet enjoyment, and against defects and incumbrances, they may be set up against and in bar of a suit to recover the purchase money, or they may be recovered by direct action upon the covenants.

The grantors are liable for any breach of their covenants, and as this mortgage was given to secure them, the recoupment or offsets may be made against the claim of the present plaintiff, who was one of them and who represents them in this suit.

8. The decree directs the sheriff to pay out of the proceeds of the sale the rent due on the lease, excepting the rent which may have accrued during the time the property could not be enjoyed by Coy and his heirs by reason of the military disturbance. This is not correct. There does not appear to be any reservation in the lease as to any interruption of the occupancy by reason of the disturbance, and it has been held by this court (in Robinson vs. L'Engle, 13 Fla.,) that where there is an express covenant to pay rent, the loss of the use of the premises on account of the casualties of war, is no lawful excuse for the non-payment of rent. And moreover, there was no proper issue before the court upon which to decide that question between the lessor and the lessee of these premises, nor in any event could the sheriff properly determine the amount to be paid out of the proceeds. If the proceeds are to be distributed among adverse claimants, they should be

paid into court and distributed under its order after a full hearing.

9. It does not appear to this court that the defendants, Edward N. Dickerson and A. H. Cole, are necessary or proper parties to this action. Their rights appear to be antagonistic as well as superior to those of the plaintiffs and the other defendants.

The decree of the Circuit Court in this cause is reversed, and the cause remanded with directions that such further proofs be taken by the parties as may be deemed necessary, and that the parties may amend their pleadings in such respect as may be deemed advisable, and that such other proceedings be had as may be according to law and the practice of the court. The clerk will transmit to the Circuit Court for Nassau county a copy of the opinion herein, together with the judgment of this court. It is further ordered that the appellant pay the disbursements in and about her appeal, but that the respondent recover no costs.