A petition for a re-hearing has now been filed on behalf of plaintiff in error, Matilda Fiehe, by her present guardian, which petition is addressed to the second opinion and decision of this court filed on October 17, 1929, affirming the lower court in directing a verdict against plaintiff below, plaintiff in error here. *Page 672 
We find no reason to depart in the slightest degree from what we said in the opinion of October 17, 1929. We will, however, notice briefly three propositions advanced in the petition for rehearing, in the particular aspect in which they are now urged in that petition.
A proper conception of the principles decided in the opinion of October 17, 1929, requires that it be constantly borne in mind that this action is a collateral, not a direct, attack upon the judicial proceedings culminating in the guardian's sale in question. No fraud is charged.
I. It is now contended for plaintiff in error, according to the language of the petition for re-hearing, that "the question involved in this proceeding and the one raised and insisted upon by plaintiff in error is as to when the decree appointing the guardian of the estate of the lunatic became effective and the effect of the failure to record the chancery decree adjudicating plaintiff in error a lunatic for nine years after the purported sale," there being two decrees involved. The latter decree, says the petition for re-hearing, "the court has apparently entirely overlooked in its decision of this case."
The decree last mentioned was that of the Circuit Court of Hillsborough County made on July 20, 1895, by which Matilda Fiehe was adjudged insane and her husband, Antone Fiehe, was appointed guardian of her person. The assumption by the representative of plaintiff in error that this decree was "entirely overlooked" by the court is hardly consistent with the fact that the existence of this decree is spoken of in the second paragraph of the opinion of October 17, 1929. The decree not only was not overlooked, but was given due consideration by the court. By merely mentioning the existence of this decree, the court gave it the same emphasis, and treated it in the same perspective, accorded it in the briefs filed for plaintiff in *Page 673 
error. The original brief for plaintiff in error consists of 102 pages, of which seventeen pages are devoted to a discussion of the effect of the nunc pro tunc order of October 27, 1907, upon the order of the Circuit Court of July 14, 1898, appointing Antone Fiehe guardian of the estate of Matilda Fiehe, and the effect of these two orders, considered together, upon the validity of the guardian's sale. Beyond a mere incidental reference to its existence, the order of July 20, 1895, adjudicating Matilda Fiehe insane and appointing Antone Fiehe guardian of her person, upon the supposed inefficacy of which order the representative of plaintiff in error now claims to have also and equally relied, was not alluded to in the original and principal brief, and there is no argument upon that order to be found in that brief. On the contrary, the following statement is made in the original and principal brief filed on behalf of plaintiff in error: "A chronological outline of the proceedings 'in so far as they affect this sale,' is as follows:" The first item of the tabulation is:
 "Order dated July 14, 1898, appointing Anton Fiehe guardian of the property of Matilda P. Fiehe, a lunatic."
Then follows a list of all the proceedings and other orders discussed in the court's opinion of October 17, 1929. Though this tabulation on behalf of plaintiff in error purports to be "chronological" and exhaustive, it begins with the circuit court decree of July 14, 1898, which was discussed at length by the court in its opinion of October 17, 1929. The decree of July 20, 1895, adjudicating Matilda Fiehe insane and appointing a guardian of her person, upon which much emphasis is now placed in the petition for re-hearing, is not even mentioned, though *Page 674 
all other orders and proceedings in both the circuit and probate courts are tabulated.
The following also appears in the original and principal brief filed for plaintiff in error: "* * * There are five major questions presented for decision by this Honorable Court * * *. In brief, these five major questions are as follows: First: Did the trial court err in admitting in evidence the order appointing Antone Fiehe guardian of the estate of Matilda P. Fiehe, together with the order entered approximately nine years later, ordering that such decree be recorded nunc pro tunc?
This question is raised by assignment of error No. 1."
The four remaining questions stated and discussed in the brief relate solely to the proceedings in the probate court. In none of the five major questions so tabulated in the brief is there any reference, direct or otherwise, to the circuit court order of July 20, 1895.
A reply brief was filed for plaintiff in error in which four pages were devoted to the question of the nunc pro tunc order, the order of July 14, 1898, and the effect of these two orders on the guardian's sale, but yet no more than a cursory mention is made of the order of July 20, 1895.
When the petition for re-hearing was filed herein by thedefendant in error, addressed to the first opinion of this court filed on May 15, 1929, a brief consisting of twenty-nine pages was filed on behalf of plaintiff in error. Beyond merely incidental references contained in three paragraphs, this brief contains no mention of, nor argument upon, the original circuit court order of July 20, 1895, though some ten or more pages of this brief are devoted to the circuit court order of July 14, 1898, and the nunc pro tunc order relating thereto. Some of theabstract propositions of law argued in the latter brief *Page 675 
relating to the invalidity of a guardian's sale made by one who had not been duly appointed guardian, might be regarded as applicable either to the order of July 20, 1895, adjudicating the insanity of Matilda Fiehe and appointing a guardian of her person, or to the order of July 14, 1898, appointing a guardian of her estate, but the context of the brief in which this argument is found indicates clearly that the argument is applied to the order of July 14, 1898, appointing a guardian for the estate, and the subsequent nunc pro tunc order, and not to the first order of July 20, 1895, adjudicating the lunacy and appointing a guardian for the person of Matilda Fiehe, the latter being now prominently stressed on behalf of plaintiff in error on petition for re-hearing.
The record and briefs also indicate that the discussion in the trial court on this phase of the case centered upon the order of July 14, 1898, and the nunc pro tunc order, and not upon the order of July 20, 1895.
No intimation is found that the representative of plaintiff in error placed any serious reliance upon the supposed failure to record the order of July 20, 1895, until her presently filed petition for re-hearing addressed to the opinion of October 17, 1929, which opinion was adverse to her.
In order, however, that there may be no misconception of our view as to the order of July 20, 1895, we will briefly consider its effect upon the guardian's sale. This is the order of the Circuit Court for Hillsborough County adjudicating Matilda Fiehe to be insane and incapable of taking care of herself or attending to her own affairs, and appointing Antone Fiehe guardian of her person.
The record shows that this order was actually made and signed by the judge of the circuit court on July 20, 1895. It was "filed" July 20, 1895. It was "re-filed" *Page 676 
July 3, 1909. It is styled, "Ex parte Matilda P. Fiehe, Inquisition of Lunacy," and though it appears to bear a clerk's number as a case on the law side of the court, the recitations of the decree show clearly that it was rendered on the chancery side. The following notation appears at the top of the order as it appears in the transcript of the record: "Minute Book 14, page 281", indicating that the order would be found of record there. We will assume for purposes of discussion that although this decree was actually signed by the chancellor and filed in the clerk's office prior to the guardian's sale, it was not actually recorded in the minutes of the court until after such sale, and that the place of record noted on the order refers to the place where the order was recorded when it was re-filed on July 3, 1909, as is indicated by the clerk's certificate attached to the decree as offered in evidence. To a large extent, the discussion appearing in the opinion of October 17, 1929, with reference to the order of July 14, 1898, also applies to this order of July 20, 1895, although there is no showing that the latter order was ever recorded by authority of an order nunc pro tunc. It appears beyond dispute that prior to the time Antone Fiehe was appointed guardian of the estate of Matilda Fiehe, and likewise prior to the proceedings in the probate court culminating in the guardian's sale in question, there had been a judicial ascertainment of the insanity of Matilda Fiehe, the regularity of which is not questioned; that all matters presented in that behalf had been judicially considered and acted upon; that the order adjudging her insane was actually in existence, having been signed on July 20, 1895, and on that date filed in the office of the clerk of the circuit court as a public document. Even if we assume that the subsequent proceedings in the probate court which culminated in the guardian's sale was a *Page 677 
"proceeding had" on the order of the circuit court of July 20, 1895, within the meaning of Sec. 1448, Rev. Stats. 1892, then the most that can be said of the failure to record the latter order in the minute book as then required by Sec. 1448,supra, would be that if the subsequent probate proceedings had been questioned upon direct attack by certiorari or other appropriate method, it might have been held that such proceedings were ineffectual to divest the ward of her title. On a collateral attack such as this is, however, that rule does not apply, for the reasons already explained in the opinion of October 17, 1929. The same person who now brings this collateral attack, or any other next friend of the ward, could have instituted in the circuit court, by certiorari or by other appropriate method, a direct proceeding to review the probate orders authorizing and confirming the guardian's sale. See Constitution, Art. V, Sec. 11; Emerson v. Ross, 17 Fla. 122,128; Secs. 5913, 4642, C. G. L. 1927. To hold, upon collateral
attack, that the judicial action, and the effect of a solemn adjudication by competent judicial authority represented by the order of July 20, 1895, is defeated and rendered ineffectual by the mere failure of the clerk to perform his ministerial duty to record the order, though it had been filed in the office as a public document, would be anomalous in the extreme, no fraud being shown, the rights of no innocent third parties being involved, and no prejudice to the ward being shown. The contrary of such a proposition was expressly held in McGregor v. Kellum, 50 Fla. 581, 39 So. R. 697, the decision in which was rendered in 1905 and in which it clearly appears that the decree there in question was rendered on June 15, 1892, and had not yet been recorded when the attack thereon was made nor when the decision thereon was rendered by this court, it being stated in *Page 678 
the concluding paragraph of that opinion that "for the better security of the record thereof it is deemed advisable that said decree be now recorded." It was expressly held that though the statutory requirement for recording was "mandatory," a failure to comply with the statute did not render the decree void upon collateral attack, since the statute related, not to jurisdiction, but to orderly "procedure."
II. In the petition for re-hearing it is again urged for plaintiff in error "that no attack either collateral or direct on any decree of the circuit court is involved in this cause, but that on the contrary the order that is attacked is the order of the probate court purporting to authorize the sale of property."
As already pointed out, much of the argument for plaintiff in error is devoted to an effort to demonstrate the inefficacy of the circuit court order of July 14, 1898, as a predicate for the action of the probate court in authorizing the guardian's sale in question. One of the primary contentions for plaintiff in error is that because the circuit court order appointing a guardian for the estate of Matilda Fiehe was not recorded in the minutes prior to the guardian's sale, it did not become effective and therefore the county judge was without power to authorize or confirm a sale by the guardian named in the order, as a consequence of which the guardian's sale was void because in contemplation of law there was no competently appointed guardian with authority to apply for leave to sell. Obviously this action is not a direct proceeding to review or correct either the orders of the circuit court or the orders of the probate court. It is therefore collateral to all those orders, and in so far as it questions their validity or efficacy it is a collateral attack upon them. We are aware, of course, that if plaintiff *Page 679 
in error prevailed in her contentions it would not result in complete nullification of the circuit court orders as it would the probate court orders. The former would nevertheless, even under those circumstances, remain operative as to matters transpiring subsequent to their recordation, while the probate orders would fall completely if plaintiff in error prevailed. Though the focal point of attack is of course upon the orders of the probate court authorizing and confirming the guardian's sale, one of the primary reasons advanced for plaintiff in error as to why the probate orders were void is that the circuit court order of July 14, 1898, had not been recorded and therefore had not "become effective" so as to afford a jurisdictional foundation for the orders of the probate court. Thus, without indulging in refinements of language, it clearly appears that the efficacy of the orders of the circuit court are inevitably drawn into question and are therefore under attack, which attack is collateral. If the circuit court orders are not here drawn into question, and hence are not under attack, we are at a loss to understand why so much effort has been directed by the plaintiff in error toward a demonstration of the supposed infirmities in those orders by reason of the clerk's failure to record the same. Plaintiff in error, through her representative, in this petition for re-hearing states: "The question as to whether or not the order appointing a guardian for the estate of the lunatic was void, is immaterial." Yet the representative of plaintiff in error has devoted some thirty or more pages of his several briefs to an effort to demonstrate that that very order was ineffectual and unavailing in support of defendant's title in this controversy merely because such order had not been recorded. The emphatic and vigorous assault heretofore made on behalf of plaintiff in error upon the efficacy of the circuit court orders *Page 680 
to support the subsequent orders of the probate court does not harmonize with the statement now made in her petition for re-hearing, addressed to an adverse decision, that "the decision of this court upon re-hearing was due principally to a misconception as to the identity of the order upon which the attack was made," plaintiff in error now contending that "no attack either collateral or direct on any decree of the circuit court is made in this case," but that the attack is solely upon probate orders.
III. The petition for re-hearing under consideration contains the following statement: "The decision on the re-hearing in this case in holding that the court has jurisdiction by virtue of the appointment of a guardian and that the requirements of statute with reference to the procedure are not strictly jurisdictional, overlooks and reverses every previous decision by this court with reference to guardians' sale." Immediately following this statement a reference is made to the case of McIntyre v. Parker, 77 Fla. 690, 82 So. R. 253, in which, referring to Coy v. Downie, 14 Fla. 544, it is said: "That decision (in Coy v. Downie) announced the doctrine that the publication of notice required by statute is jurisdictional." The answer to the proposition quoted at the beginning of this paragraph is that this court has made no such decision. We presume the statement refers to the action of this court sustaining the trial court in declining to permit the introduction on behalf of plaintiff in error, plaintiff below, of evidence dehors the record upon the question of whether or not a notice of the guardian's intention to apply for leave to sell was in fact published as required by statute, when the order of the county judge authorizing the sale expressly found and recited: "It further appearing that due notice by publication of the intention to make this application has been made by the petitioner, * * *," and *Page 681 
there was nothing of record to contradict such finding, the evidence in the present case showing that the county judge's files were lost, and nothing appearing of record as to the giving of the guardian's notice except the finding with reference thereto contained in the county judge's order just quoted.
As has been several times held by this court, and as is now held, the giving of such a notice is jurisdictional. Whether or not that notice has been given, however, is a jurisdictional question of fact, not of law, which question the county judge is authorized to inquire into and determine. As is plainly stated in the opinion of October 17, 1929, "it is not a decision by the county judge upon his jurisdiction over the subject matter or the parties to the proceeding," but "it is a further jurisdictional prerequisite to the power of the (probate) court to proceed further, or to act pendente lite, in a matter in which it has already acquired jurisdiction of the subject matter and of the parties." Establishment of that fact depends upon evidence in pais, the sufficiency of which the county judge is authorized to determine. When the jurisdiction of the county judge has been properly invoked for a determination of that question of fact, and it affirmatively appears by the record that the county judge has determined that the notice was given, though the county judge in the exercise of that jurisdiction acts as a court of limited or special jurisdiction, his finding upon such jurisdictional question offact is conclusive as against collateral attack unless other parts of the record, of equal dignity with the finding, show affirmatively that the finding can not be true. On collateralattack such finding can not be impeached, nor can the record be "completed," as the representative of plaintiff in error contends he seeks to do here, by evidence dehors the record. In so *Page 682 
holding, this court has adhered to, and has neither departed from nor modified the views of this court heretofore expressed in Coy v. Downie, 14 Fla. 544; Leuders v. Thomas, 35 Fla. 518, 17 So. R. 633; McIntyre v. Parker, 77 Fla. 690, 82 So. R. 253; Wilkins v. Deen Turp. Co., 84 Fla. 457, 94 So. R. 508; Standard Oil Co. v. Mehrtens, 118 So. R. 216; Clem v. Meserole, 44 Fla. 234, 32 So. R. 815, nor any other previous case on the subject. On the contrary, what is said in the opinion herein of October 17, 1929, is consonant with the previous holdings of this court in the cases above cited, as well as the many additional cases cited in said opinion.
We see no useful purpose to be served by a further discussion of the other matters presented in this petition for re-hearing, all of which have been exhaustively discussed in the opinion of October 17, 1929.
Petition for re-hearing and for re-argument denied.
TERRELL, C. J., AND WHITFIELD, ELLIS, AND BROWN, J. J., concur.
BUFORD, J., dissents.