TOOTIE B. McGREGOR, APPELLANT, v. JAMES E. KELLUM AND SALLIE MILLER, APPELLEES.

1. A homestead is abandoned when the homesteader removes his family therefrom, taking up his permanent abode at a distant place where he makes a livelihood by the practice of his profession, becomes a registered voter, takes an active part in politics, buries his wife and is himself buried, and during the four years intervening the removal and his death never sees the homestead except perhaps as a casual visitor, even though he may have expressed a desire to retain the old place for his children.

2. The heirs at law of an intestate mortgagor were not necessary parties to a foreclosure proceeding in equity against the administrator of such mortgagor prior to June 13th, 1892, when the Revised Statutes of Florida took effect, and when a decree pro confesso had been entered, and a master's report had been filed in such a case prior to said

13th day of June, 1892, the final decree of foreclosure ren
dered therein against such administrator subsequently to
said last mentioned date was fully binding upon the heirs
at law though they were not individually named as par-
ties to such decree.

3. The failure to record a final decree duly passed and signed
by the judge and filed by the clerk does not render subject
to collateral attack a sale thereunder that has been form-
ally confirmed by the court.

On petition for rehearing a slight modification in the state-
ment of a fact in the finding of abandonment is made but as
it does not affect the ultimate finding the petition is denied.

This case was decided by Division A.

Appeal from the Circuit Court for Lee County.

### STATEMENT.

James E. Kellum, Sallie Miller and Charles Miller, her
husband, exhibited their bill against Tootie B. McGregor
in the Circuit Court for Lee county on the 29th day of
November, 1904. An amended bill was filed the following
February, which covered fully the case as made by their
original bill and need alone be considered. Charles Mil-
ler, who joined in the suit solely because of the coverture
of his wife, died during the pendency of the litigation.

The amended bill alleged that the complainants are the
heirs at law of James Kellum deceased; that the said
James Kellum, about a year previous to his death in
1890, executed a mortgage upon certain designated lands,
a portion of which is alleged to have been his homestead;
that on March 13, 1891, one James W. Bain was ap-
pointed administrator of the estate of the said James
Kellum, and on March 23, 1892, the mortgagee filed a bill

to foreclose said mortgage, and that the administrator alone was made a party defendant to said foreclosure; that a decree *pro confesso* was entered May 2, 1892, against the administrator and the cause having been duly referred to a special master, he reported on the 10th day of June, 1892, the amount found to be due; final decree was rendered June 15, 1892, confirming the report of the master and ordering the property sold; at this sale A. M. McGregor became the purchaser and on confirmation entered into possession of the realty, his title and possession coming down through various conveyances, needless to set out, to the defendant. This bill attacks the validity of the foreclosure proceedings upon the grounds that the James Kellum heirs, who have recently become of age, were not parties thereto and that the final decree therein though properly signed by the judge and filed with the clerk, was never recorded.

The complainants prayed for cancellation of the master's deed to A. M. McGregor and of the deeds based thereon, for an accounting, for permission to redeem, for possession of the property, and for general relief.

The defendant, making the usual reservation, answered among other things that James Kellum permanently abandoned the alleged homestead in May, 1886.

Replication was filed to this answer and testimony taken which was confined, however, excepting certain stipulations of counsel and introduction of the foreclosure proceedings to the question of abandonment.

Upon final hearing the court decreed in accordance with the prayers of the bill, finding specifically in favor of the homestead, secondly that irrespective of the homestead feature the heirs were necessary parties, and thirdly that

the failure to record the final decree in the foreclosure sale rendered the master's sale thereunder void.

From this decree the defendant appealed to this court.

*Cooper & Cooper,* for Appellant.

*Solon B. Turman,* for Appellees.

COCKRELL, J., *(after stating the facts.)* We shall discuss the propositions decided by the Circuit Court in the order in which they occur in the final decree.

I. Had the alleged homestead been abandoned by James Kellum, prior to the time of his death? We may admit for the purpose of the argument that except for an abandonment the heirs were necessary parties, without whom a decree of foreclosure as to it is an absolute nullity and subject to collateral attack in the manner sought by this bill.

On mere questions of fact, dependent upon credibility of witnesses, this court is reluctant to interfere with the finding of the Circuit Court, but happily in the matter before us the contradictions are but trivial and the question resolves itself therefore into one of law rather than of fact.

It is shown conclusively that Dr. James Kellum lived for ten years or more with his wife and children on the property, cultivating with little success a small grove, but was persuaded in 1886 to move to the town of Fort Myers where the greater population would enable him to utilize his profession, that of a practicing physician, to greater advantage; that he remained at Fort Myers continuously with his family until his death in 1890, and was there buried with his wife whose death preceded his

McGregor v. Kellum and Miller—Opinion of Court.

a year or more; that he left a portion of his household goods at the old place, but these were all moved to Fort Myers in 1888, after a fire had destroyed an out house; that he made some attempt to keep up the orange grove for about two years, when all attempts were abandoned, and the only attention paid to the place was the voluntary act of a neighbor who occasionally went over there to secure some slight fire protection, and that during the four years and more intervening the move to Fort Myers and the mortgagor's death neither he nor any member of his family ever saw the old place. On the contrary, he entered at once into the active life of the town, remained there continuously, maintained himself and family by the practice of his profession there, and took an unusual amount of interest in its public affairs and local politics. We think it is sufficiently established, in the absence of a specific ruling by the court upon the testimony adduced, that he was not only a registered voter of the town, but also exercised that privilege when occasion offered. As opposed to this intent so forcibly shown by his acts, we have most unsatisfying statements that his conversation had left on the minds of his hearers, an intent to keep the old place for his children and anxiety lest he lose it because of the mortgage. His residence in Fort Myers was not of a temporary nature, but of such permanency as to cause an abandonment of his homestead rights in his former dwelling place. His failure to buy a home in town was due to financial distress rather than to the ephemeral nature of his stay. This case cannot be distinguished in principle from the rule enunciated in Murphy v. Farquhar, 39 Fla. 350, 22 South. Rep. 681. As to the weight to be given to oral declarations, see Smith v. Croom, 7 Fla. 81.

The evidence clearly shows an abandonment of the homestead.

II. Irrespective of the homestead feature were the heirs of the dead mortgagor necessary parties to a bill to enforce the mortgage lien, which was commenced against the administrator of the deceased and had proceeded to a decree *pro confesso* and the report of a special master, prior to the going into effect of the Revised Statutes? We do not now undertake to discuss whether the absence of such parties renders the decree void or merely voidable.

In Scott v. Jenkins, 46 Fla. 518, 35 South. Rep. 101, an appeal from a decree of foreclosure in a case that was pending June 13, 1892, when the Revised Statutes took effect, but wherein it appeared that after this date the mortgagor died and the cause was revived in the name of her administrator alone, we considered the changes in the law made by the Revision and reversed the cause because the heirs of the mortgagor who alone upon the showing made properly represented the realty, were not before the court, and further held that the mere pendency of the suit made no difference. There it was clear that whatever rights and representative capacity the administrator possessed were controlled by the law in effect at the time of his appointment and had no relation back to the time of the filing of the original bill. Prior to the Revised Statutes it was the settled law of this State that as the posession of the realty, not the homestead, was cast immediately upon the administrator, as unconditional assets in his hands for administration he alone could represent the estate of the intestate in all kinds of actions affecting the realty. The change was wrought by the Revisers in casting the possession immediately upon the heirs and to be taken by the administra-

tor only by a special order of the court for specific purposes. This unconditional making of the realty assets in his hands conferred upon the administrator certain rights, privileges, emoluments, obligations and duties, including therein the capacity to represent the estate of his intestate in the foreclosure proceedings. When the bill was taken as confessed, every right the mortgagor himself, had he been alive, and every right any one claiming under him by descent or otherwise might have set up, were effectually cut off. The proceedings thereafter were *ex parte.* The complainant had the right then to proceed to a decree consonant with his bill and in the language of the saving clause in section 3, Chapter 4055 of the act adopting the Revised Statutes, it was a "right accrued before such repeal." The heirs then were not necessary parties.

III. The failure to record the decree duly passed and signed by the judge and filed by the clerk, does not render subject to collateral attack a sale thereunder formerly confirmed by the court.

The judgment and decrees of a court of general jurisdiction as to subject matter and undoubted jurisdiction over the person are not to be set aside for failure to observe the provision of a statute, however salutary, that looks not to jurisdiction but to orderly safe procedure and the performance of which rests upon some non-judicial officer. Our statutory provision (Rev. Stats. of 1892, Sec. 1448) that "no process shall be issued or other proceeding had on any final decree or order until the same shall be signed and recorded," contains no penalty for failure to observe it. This statute was applied and enforced on an appeal taken directly from an order for a writ of assistance against the specific objection that the

decree of sale had not been recorded. Wilmott v. Equita-
ble Building & Loan Association, 44 Fla. 815, 33 South.
Rep. 447. There we characterized the statute as "man-
datory" but that we did not use the word as synonymous
with or in the sense of jurisdictional is shown by the sen-
tence following in which we expressly declined to say
whether the sale was absolutely void or could be cured
by a recordation *nunc pro tunc.* There are authorities
which appear to hold that an execution issued before
recordation of a judgment is void; but so far as we have
examined them they are cases of common law judgments
entered by clerks, without any action on the part of the
judge and in none of them did the sale pass under the
judicial eye in the form of a confirmation by him. An
objection might have been made at the time of the con-
firmation, which if not sustained by the lower court
would have availed on appeal therefrom; but having fail-
ed to urge the objection in the proper way and at the
proper time, it is no longer open. Price v. Winter, 15
Fla. 66; 17 Am. & Eng. Ency. Law (2nd ed.) 1033.

Some minor objections were made to the original pro-
ceedings, but these were not passed upon by the Circuit
Court, nor do we feel that they are worthy of discussion
by us. Let it suffice to say that there is no merit in them.

There has been no substantial change in the status of
the parties since the decree of June 15, 1892, and for the
better security of the record thereof it is deemed advisa-
ble that said decree be now recorded. It is therefore
ordered and adjudged that the decree appealed from be
reversed with directions to dismiss the bill at complain-
ant's costs upon proof that the decree of June 15, 1892,
has been recorded upon the minutes of the Circuit Court
of Lee county.

The costs of this appeal are taxed against the appellees.

SHACKLEFORD, C. J., and WHITFIELD, J., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.