This is an action in ejectment instituted in the name of Matilda P. Fiehe, an insane person, by her present guardian, Frank A. Bell.
On July 20, 1895, Matilda Fiehe was adjudged insane by an order of the Circuit Court for Hillsborough County and Antone Fiehe, her husband, was appointed guardian of her person. See Chap. 4357, Acts of 1895. On July 14, 1898, said Circuit Court, acting pursuant to Chap. 4359, Acts of 1895, appointed Antone Fiehe guardian of the estate of Matilda Fiehe. Antone Fiehe is now dead and Frank A. Bell has been appointed guardian. Matilda Fiehe remains insane.
At the trial, plaintiff deraigned title to the lands in question from the United States into Matilda Fiehe, introduced certified copies of the appointment of Frank A. Bell as guardian, and rested.
Defendant deraigned title through a guardian's sale of the lands ordered by the county judge of Hillsborough County on October 5, 1899, and confirmed on October 7, 1899, which sale was made upon the petition of Antone Fiehe as guardian. The title arising from said guardian's sale passed through mesne conveyances into defendant, and is relied on by defendant in this action.
The sole question is as to the validity of the guardian's sale and the deed made pursuant thereto, which plaintiff claims are void.
In appointing Antone Fiehe guardian of Matilda Fiehe, the Circuit Court acted, by the express terms of Chap. 4359,supra, in the exercise of its chancery jurisdiction. *Page 643 
The order appointing Antone Fiehe guardian of the estate of Matilda Fiehe was signed by the Circuit Judge and filed with the clerk on July 14, 1898, and bears the file mark of the clerk as of that date, but was apparently not recorded in the minutes of the court as required both by Chap. 4359,supra, and by Sec. 1448, Rev. Stats. of 1892.
Sec. 1448, Rev. Gen. Stats. 1892, which was in effect at the time of all the proceedings here in question, provides:
 "Decrees in equity may be signed by the Judge when pronounced and shall be recorded upon the minutes of the court without any other enrollment. And no process shall be issued or other proceedings had on any final decree or order until the same shall have been signed and recorded as aforesaid."
That Section, slightly amended so as to provide that the decree shall be recorded "in the chancery order book," instead of "upon the minutes of the Court," is now Sec. 4948, Comp. Gen. Laws 1927.
On December 27, 1907, the Circuit Court for Hillsborough County entered an order reciting that "through inadvertence" neither the petition of Antone Fiehe to be appointed guardian nor the order appointing him were recorded at the time the order was made; "that said guardian has acted under said appointment, and made disposition of certain property belonging to Matilda Fiehe," and that "for the purpose of correcting said inadvertence" it is "ordered that said petition and order appointing said guardian be recorded by the Clerk of this Court as of the 14th day of July, 1898, in the minutes of this courtnunc pro tunc."
Plaintiff contends that the guardian's sale is void, first, because it was a "proceeding had" on the order or decree of the circuit court of July 14, 1898, appointing Antone *Page 644 
Fiehe guardian of the estate of Matilda Fiehe, which order or decree was made in the exercise of the court's chancery jurisdiction, but was not "recorded upon the minutes of the court" as required by Sec. 1448, Rev. Stats. 1892, then in effect, prior to the proceedings which culminated in the guardian's sale. See Sec. 4948, Comp. Gen. Laws 1927. To support this contention, plaintiff relies on Lilmot v. Equitable Bldg. Ass'n, 44 Fla. 815, 33 So. R. 447, and Thompson v. Thompson, 112 So. R. 766. The Wilmot case holds that a writ of assistance issued pursuant to a final decree of foreclosure and sale is a "proceeding had" on such final order within the meaning of Sec. 1448, Rev. Stats. 1892 (Sec. 4948, C. G. L. 1927), and reverses the decree granting the writ of assistance because the final decree of foreclosure had never been recorded, either before the writ of assistance was issued orthereafter. The Thompson case reverses as erroneous a final decree granting a divorce and declaring a trust in real estate because based upon testimony taken before a special master prior to the time the order appointing the master was "filed and recorded." The rule announced in the latter case, however, has since been altered by Chap. 11922, Acts of 1927. See Montgomery v. Durrus, 114 So. R. 665.
There are two circumstances which vitally distinguished this situation from that presented in the Wilmot and Thompson cases,supra. In the first place, this is a collateral attack upon the orders here in question and upon the guardian's sale. 34 C. J. 522. The scope of the inquiry is therefore limited to jurisdictional matters, a deficiency in which would render void
the orders attacked. Mere irregularities can not be reviewed in such a proceeding. Moffer v. Jones, 169 Pac. R. 562. The action taken in the Wilmot and Thompson cases, supra, was upon a direct attack by appeal to review the proceedings there *Page 645 
in question. Such was the situation also in Grimsley v. Rosenberg, 114 So. R. 553, also relied on by plaintiff.
This Court has never held that proceedings had upon an unrecorded decree or order are void or amenable to collateral attack, but has held only that such proceedings are inoperative or erroneous when attacked in a direct proceeding. In the Wilmot case the latter question, as well as the question of the effect of an order nunc pro tunc, was expressly reserved. The question, however, was settled in McGregor v. Kellum, 50 Fla. 581, 39 So. R. 697, which was a collateral attack upon the validity of a master's sale in foreclosure, which sale was had pursuant to a final decree which had not been recorded when the sale was made, nor had it yet been recorded when the collateral attack upon it was made. The lower court held that a failure to record the final decree of foreclosure rendered the master's sale thereunder void. In reversing the circuit court on that point this Court said:
"The failure to record the decree duly passed and signed by the judge and filed by the clerk, does not render subject to collateral attack a sale thereunder formally confirmed by the court. The judgment and decrees of a court of general jurisdiction as to subject matter and undoubted jurisdiction over the person are not to be set aside for failure to observe the provisions of a statute, however salutary, that looks not to jurisdiction but to orderly, safe procedure and the performance of which rests upon some non-judicial officer." It was further said in that case that while in the Wilmot case the recording statute had been characterized as "mandatory," the word "mandatory" was not used as synonymous with or in the sense of "jurisdictional."
The effect of the doctrine of nunc pro tunc was not considered in the Wilmot and Thompson cases, supra, as no *Page 646 
order nunc pro tunc had been made in those cases. On the contrary, the orders there assailed had never been recorded either originally or by a subsequent order nunc pro tunc before they were called into question. In this case, however, the question ordered was duly recorded nunc pro tunc prior to the time it was drawn into the question, another circumstance which distinguishes this situation from that presented in the Wilmot and Thompson cases, supra.
Every judicial function required by the law in the appointment of this guardian was performed prior to the guardian's sale. The appointment was made by the Circuit Court, a court having a general jurisdiction over the subject matter, and with undoubted jurisdiction of the parties, as will be hereinafter explained. It was judicially ascertained and determined that this guardian should be appointed, the circuit judge in fact signed the order appointing him, thus doing all that was judicially necessary, or that could be done judicially to make and effectuate such appointment. The order appointing the guardian was actually filed in the office of the clerk on the date the order was signed by the judge. The only thing lacking in the procedure here under consideration was the performance by the clerk of his ministerial duty to record the order when it was filed with him, which order was merely the evidence of the judicial action already taken according to due course of law, in which ministerial duty alone the clerk failed. Such failure, under the circumstances, is clearly a ministerial misprision which it is the legitimate function of an order nunc pro tunc to remedy. Florida Development Co. v. Polk Co. Nat'l Bank, 76 Fla. 629, 80 So R. 560; 34 C. J. 71, et seq.; Hagler v. Mercer, 6 Fla. 721; Davidson v. Richardson, 91 Pac. R. 1080; 17 L.R.A. (U.S.) 319; Jett v. Farmer's Bank, 76 So. W. R. 385; In re: Est. of Emma Cook, 1 L.R.A. 567; 1 Black on Judgt. (2nd Ed.) p. 190; *Page 647 
15 Encyc. P. P. 244. See also Moran v. Coffin, 241 So. W. R. 338.
No right of innocent third parties intervened between the making of the order appointing the guardian and the order for its recordation nunc pro tunc. The ward received the benefit of a competent judicial ascertainment and determination of the necessity for the appointment of such guardian. No fraud is charged. The ward is not shown to have been prejudiced in respect to either her personal or property rights. Her interests appear to have been protected in precisely the same manner and to precisely the same extent as if the order had originally been recorded as required by the statutes. To hold the judicial appointment of the guardian void and inoperative notwithstanding the order nunc pro tunc, and merely because the clerk did not record the order of appointment as he should have done, is to permit a misprision in the performance of a mere clerical or ministerial duty to nullify and abrogate the judicial order of the court, which order was arrived at as a result of orderly judicial procedure wherein the court had jurisdiction of the subject matter and the parties, and to place it beyond judicial power to rectify such misprision or to effectuate such judicial order, when neither the ward nor innocent third parties would be prejudiced thereby. The prevention of such anomalous and unjust situations, when the circumstances are as we find them here is the foundation of the doctrine of nunc pro tunc. Certainly for the purpose of consideration on this collateral attack, the original failure to record the order amounts to no more than a mere irregularity, no rights of innocent third parties having intervened and no prejudice to the rights of the ward being shown, which irregularity has been duly corrected by the ordernunc pro tunc. Even such an irregularity in process by publication has been corrected in like *Page 648 
manner. See Valz v. Sheepshead Bay Corp., 163 N.E. R. 124,certiorari denied by U.S. Supreme Court, 73 L.Ed. 185.
Plaintiff further contends that the order nunc pro tunc dated December 27, 1907, was impotent to effectuate the order appointing the guardian as of the date the latter order was originally made, for the additional reason that to give such effect to the order nunc pro tunc would deprive the ward of her property without due process of law, the order nunc pro tunc
having been made ex parte and long after the guardian's sale upon which this defendant relies for its title.
In determining whether or not the requirements of due process have been observed in these matters, it must be remembered that there is a marked distinction between an inquisition proceeding in which a person is adjudged a lunatic, and a proceeding for the sale of the property of one who has been previously adjudged insane. Each of those proceedings involves an exercise of the State's inherent power of sovereignty. The first is an adjudication upon the status of a person. As to the public generally, and in so far as it affects the public interest, that proceeding is in the nature of a proceeding inrem. See Wheeler v. State, 34 Ohio St. 394; 14 R. C. L. 582
(38), 589, et seq.; 32 C. J. 729; Leggate v. Clark,111 Mass. 308; Dewey v. Allgire, 55 N.W. R. 276; Eagle v. Peterman, 206 So. W. R. 55; 7 A. L. R. 553. As to the person whose sanity is in question, however, it is a proceeding in personam in which due notice and an opportunity to be heard must be afforded the subject of the inquisition. Howard v. Landsberg's Committee, 60 So. E. R. 769; 14 R. C. L. 570. A proceeding for the sale of the property of one who has been previously adjudged by competent authority to be a lunatic, or insane, is a proceeding in rem. Howard v. Landsberg's Committee, *Page 649 supra; Yaple v. Titus, 41 Pa. 195; 80 Am. Dec. 604; Eaves v. Mullen, 107 Pac. R. 433; Moffer v. Jones, supra; Dewalt v. Cline, 128 Pac. R. 121; Florentine v. Barton, 2 Wall. (U.S.) 211; 17 L.Ed. 783; Mohr v. Manierre, 101 U.S. 397;25 L.Ed. 1052; 32 C. J. 720.
The procedure prescribed by our statutes for an inquisition and adjudication of lunacy and the appointment of a guardian (Sec. 3654, et seq., Comp. Gen. Laws 1927) affords the person whose sanity is in question the full benefit of due process of law. Ex parte Scudamore, 55 Fla. 211, 46 So. R. 279. No contention is here made that our statutes were not fully complied with in that respect in the adjudication of lunacy here in question and the appointment of the guardian. When there has been a competent adjudication of lunacy, in which the requirements of due process have been observed, jurisdiction over the property of the lunatic located within the territorial authority of the court is complete, either for custody, for management, or for sale.
A proceeding by a guardian for the sale of lands belonging to his ward is not a proceeding adverse to the ward, but is a proceeding in rem, instituted and carried on by and in the interest of the ward through his legal representative, his guardian. Eaves v. Mullen, supra; Dewalt v. Cline, supra;
Moffer v. Jones, supra. The guardian represents the land. There are no adversary parties. Beauregard v. New Orleans, 18 How. (U.S.) 497; 15 L.Ed. 469. The ward having been afforded the benefit of due process in the proceeding by which she was adjudged insane, is not entitled to notice and an opportunity to be heard as an adverse party in a proceeding by the guardian for the sale of her real estate. As the decree in such a proceeding is not adverse to the interest of the ward, there is no occasion for process to be served on the ward. Moreover, of what value *Page 650 
would notice and an opportunity to be heard be to a person already adjudged insane? The ward herself could neither accept service, nor consent to the entry of a decree. For the reasons stated, it is not indispensable to due process in such proceedings that the ward be afforded due notice and an opportunity to be heard as an adverse party, as would be the case where a personal judgment is to be rendered or one which is adverse to the interests of the ward. Hunter v. Buchanan, 127 N.W. R. 166; Ann. Cas. 1912A 1072; 29 L.R.A. (N.S.) 147; Mohr v. Manierre, 101 U.S. 397; 25 L.Ed. 1052; Florentine v. Barton, 2 Wall. (U.S.) 210; 17 L.Ed. 783; Thaw v. Falls,136 U.S. 519; 34 L.Ed. 531; Price v. Winter, 15 Fla. 66, 101; Ryan v. Ferguson, 28 Pac. R. 910; Grignon v. Aster, 2 How. (U.S.) 319; 11 L.Ed. 283; Brown on Jurisdiction, Sec. 58.
It follows therefore that by entering the order nunc pro tunc
the circuit judge merely effectuated a previous order duly made in a proceeding in which the court's jurisdiction of both parties and subject matter was complete. That action of the circuit court is not open to question on collateral attack where no rights of innocent third parties have intervened. The fact that the guardian's sale intervened between the order of the appointment of the guardian and its recordation nunc protunc results in no denial of due process because the requirements of due process do not contemplate notice to the ward and an opportunity to be heard as an adversary party in the sale proceedings. At least for the purposes of consideration on collateral attack, the original failure to record the order appointing the guardian did not render the order void and ineffectual for all purposes, but the failure to record the same was a mere irregularity which it is the legitimate function of an order nunc pro tunc to correct.
Plaintiff further contends that the guardian's sale and *Page 651 
deed here involved are void because Sec. 1924, Rev. Stats. 1892, hereinafter referred to, was not complied with. At the trial, defendant introduced in evidence, as a basis of its title, certified copies of the following proceedings relating to the guardian's sale; petition of Antone Fiehe, in the circuit court to be appointed guardian; order appointing Antone Fiehe guardian; the nunc pro tunc order, dated December 27, 1907, hereinabove referred to; petition by Antone Fiehe as guardian to sell the real estate in question, filed before the county judge of Hillsborough County October 5, 1899; order of the county judge allowing sale made and filed October 5, 1899; the report of sale by the guardian filed October 7, 1899; report of commissioner appointed to make the sale, filed October 7, 1899; additional bond of Antone Fiehe as guardian; and order of the county judge confirming the sale made and filed October 7, 1899. No notice by the guardian of his intention to apply for leave to sell real estate, as required by Sec. 1924, Rev. Stats. 1892, or any certified copy thereof, was offered in evidence, but it was established by the testimony of the present county judge of Hillsborough County that the original of the guardian notice was lost and could not be found amongst the records of his office. Plaintiff objected to the admission in evidence of the guardian's deed because it had not been shown that the guardian's notice of his intention to apply for leave to sell had been given as required by the statute. The objection was overruled, the trial judge holding that the finding and recital in the order of the county judge authorizing the sale that such notice had been given, to which recital reference will hereafter be made, was conclusive, as against collateral attack, that the notice required by the statute was given, and that the record in that respect could not be impeached, on collateral attack, by evidence aliunde.
For the same reason, the trial court also *Page 652 
excluded evidence proffered by the plaintiff on rebuttal to show the contents of the notice, and the manner of its publication, from what purported to be a copy thereof found of record in a book kept in the county judge's office, but not authorized or required by law to be kept, and from the evidence of the publisher of the newspaper in which the notice in question was published. Plaintiff contends that these rulings by the trial court were erroneous.
In considering the question thus presented, it must again be recalled that this is a collateral attack, the scope of the inquiry in which is confined to jurisdictional grounds which would render void the orders under attack, since the orders of the county judge authorizing and confirming the guardian's sale, if made within his jurisdiction, can not be collaterally impeached for mere irregularities. Emerson v. Ross, 17 Fla. 122; Price v. Winter, 15 Fla. 66; Thaw v. Falls, 136 U.S. 519,34 L.Ed. 531; Moffer v. Jones, 169 Pac. R. 652. See also Thompson v. Tomlie, 7 L. Ed (U.S.) 381.
Plaintiff contends that the county judge in such matters as these acts as a court of limited and inferior jurisdiction, and that unless the record of his judgments affirmatively shows all steps necessary to his jurisdiction an order made by him in such matter is open to collateral attack. The notice required by the statute of the guardian's intention to apply for authority to sell, which has been held by this Court to be "jurisdictional," not being offered in evidence by the defendant, plaintiff further contends that the record on which the defendant relies is incomplete and fatally defective; and further, that it having been shown that the original of the notice was lost, it was competent for the plaintiff to show by the best available evidence that the notice as published did not comply with the statutes.
By Sec. 17 of Art. V, Constitution of 1885, it is provided *Page 653 
that the county judge shall have jurisdiction, amongst other matters, "of the settlement of estates of decedents and minors, to order the sale of real estate of decedents and minors, to make probate of wills, to grant letters testamentary and of administration and guardianship, and to discharge the dutiesusually pertaining to courts of probate." (Italics supplied).
At the time of the adoption of the Constitution of 1885, one of the duties "usually pertaining to courts of probate" was to administer upon the estate of persons non compos mentis. Ex parte Scudamore, supra. The jurisdiction of the county judge in those matters is therefore expressly created by the Constitution, as much so as his jurisdiction in the matter of the administration of the estates of decedents and minors. Hisjurisdiction in that respect is therefore not purely statutory. The procedure, however, which is to be followed in the exercise of that jurisdiction is statutory.
Sec. 2111, Rev. Stats. 1892, now Sec. 5916, C. G. L. 1927, provides: "The real estate of idiots and lunatics may, upon application of their guardians, be sold in the manner provided for the sale of real estate of infants."
Sec. 1924, Rev. Stats. 1892, now Sec. 5897, C. G. L. 1927, provides that authority shall not be granted the guardian to sell real estate unless the guardian shall have given previous notice published once a week for four successive weeks, in a newspaper published in the county where the application is made, of his intention to make application for such authority.
Since the jurisdiction of the county judge over lunatics and their estates arises from the Constitution just as does his jurisdiction over the estates of decedents and minors, and since the statutes provide that the real estate of insance persons may be sold by their guardians in the manner *Page 654 
provided for the real estate of infants, the decisions of this court relating to the sale of real estate by administrators and by the guardians of infants are applicable in the situation now before us.
In Epping v. Robinson, 21 Fla. 36, decided under the Constitution of 1868, this Court said:
 " The County Court has general and exclusive jurisdiction, by the statute, to grant letters of administration upon the estates of deceased persons. The order granting letters is the exercise of jurisdiction, involving the adjudication of jurisdictional facts. The judgment cannot be attacked collaterally by proof aliunde
the record to disprove the jurisdictional facts already adjudicated by the County Court. (Italics supplied.)
 " But the County Court is not a court of general jurisdiction in the course of the common law, and the rule of presumptions, as to jurisdiction not appearing of record, is not applicable to this court. Its jurisdiction should appear by its records, and when its records and proceedings do not disclose jurisdiction in a particular case, they may be attacked in any collateral proceeding by showing the absence of jurisdiction." See Grignon v. Astor, 11 L.Ed. (U.S.) 283.
It is well settled, however, that when the jurisdiction even of a court of limited and special authority appears upon the face of its proceedings, its action can not be attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises that it was correctly exercised as prevails with reference to the action of a court of superior and general authority. Epping v. Robinson, 21 Fla. 36; Comstock v. Crawford, 3 Wall. *Page 655 
(U.S.) 403. In Budd v. Long, 13 Fla. 309, it was said that a collateral inquiry into the regularity of proceedings of a court of record will not be allowed except to show an entire absence of jurisdiction. See also Thompson v. Tomlie, 7 L.Ed. (U.S.) 381.
The rule is thus stated in 34 C. J. 553: "* * * If an inferior court or one of limited jurisdiction is charged with the ascertainment of a jurisdictional fact, and its proceedings show that the fact was ascertained, the finding cannot be collaterally attacked, unless want of jurisdiction is apparent on the face of the record." See also 15 C. J. 839 wherein it is said: "Where the record of a court of limited or special jurisdiction declares the ascertainment of a jurisdictional fact, it is conclusive unless other parts of the record show affirmatively that the finding cannot be true." See also Brown on Jurisdiction, Secs. 20a, 22, 127.
See also Price v. Winter, 15 Fla. 66, in which an executor's sale of an infant's interest in real estate by order of the probate court was in question. The court examined the record and proceedings of the probate court to ascertain whether that court had jurisdiction of the subject matter and of the parties, and went no further for the purpose of considering the matter upon collateral attack. See also Sloan v. Sloan, 25 Fla. 53, 5 So. R. 603; Brown on Jurisdiction, Secs. 19, 20.
This court has held that proceedings of this nature are to be strictly construed, and that an order for the sale of the interest in real estate of a person under disability is inoperative unless the statutes authorizing the sale are strictly complied with. Wilkins v. Deen Turp. Co., 84 Fla. 457, 94 So. R. 508.
This Court has further held that the publication of a guardian's notice of his intention to apply for authority to *Page 656 
sell the real estate of his ward is "jurisdictional," and an order of sale made without such publication is void. McIntyre v. Parker, 77 Fla. 690, 82 So. R. 253. In the latter case, however, it appears that "the application of C. McIntyre (the guardian) to sell the land was not preceded by the publication of any notice * * * of his intention to make application to the judge for authority to sell" the lands. In Coy v. Downing,14 Fla. 544, in which a guardian's sale of an infant's land was held void, the opinion states that "it does not appear that proper proceedings were had to authorize the making of any order for the sale of their (the minors') interest, nor does the order in its terms authorize a conveyance." It will not be disputed that in those cases wherein it appears from the record that the notice was not given, and in the latter case also that the order of the county judge did not in terms authorize the sale, that the sales were void. But that is by no means the case here presented.
While the notice of intention to apply for leave to sell is "jurisdictional," it is not jurisdictional in the sense that it is indispensable to the acquisition of jurisdiction by the court over the subject matter or over the parties to the cause. In other words, it is not process. As has been heretofore pointed out the sale of a lunatic's land is a proceeding inrem, in which the guardian represents the land, and no notice to the ward is necessary to satisfy the requirements of due process. The purpose of the notice of sale is not to give the court jurisdiction over the person of the lunatic, or over the subject matter. That jurisdiction already exists, and is complete. General jurisdiction of the subject matter is committed to the county judge by the Constitution and statutes. The requirements of due process have been satisfied, so far as the lunatic is concerned, in the antecedent proceeding by which the ward was adjudged a *Page 657 
lunatic. So far as the requirements of due process of law are concerned, therefore, jurisdiction over the person of the lunatic, and over her property, for the purpose of sale, management or control, is complete. Ex parte Scudamore, supra;
Brown on Jurisdiction, Sec. 58. The lunatic, acting through his duly appointed guardian, himself initiates the proceeding leading to the sale, and the guardian acting for the ward, and also as fiscal officer for the court, makes the sale, in which proceeding the guardian fully represents the land and the rights of the ward therein. Brown on Jurisdiction, p. 273.
The statutory requirement that the notice shall be given, is a further jurisdictional prerequisite to the power of the court to proceed further, or to act pendente lite, in a matter in which it has already acquired jurisdiction of the subject matter and of the parties. One purpose of the publication is to give notice to other parties who may be interested that the sale is to be made. Thaw v. Falls, 136 U.S. 519; 34 L.Ed. 531. Even as to such parties, however, it may be parenthetically observed that the notice is not "process" in the strict sense of the term, because the notice does not bring such other parties into court for purposes of an adversary adjudication of their rights, nor does the order authorizing the sale purport to adjudicate the interests or rights of such other parties. As to the ward, the notice is regarded as a jurisdictional prerequisite to the power of the court to order the sale because it is designed to protect the ward's estate against improvidence, mismanagement and fraud, and to give the matter appropriate publicity to safeguard fiduciary sales of this character. But the notice does not relate to or affect the court's jurisdiction over either the subject matter or the person of the ward. It is of purely statutory origin, non-essential to the constitutional requirements of due process, and designed primarily for the protection of the *Page 658 
ward's estate and to give notice to other interested parties. In Mohr v. Manierre, 101 U.S. 397, 25 L.Ed. 1052, in discussing the validity of just such a sale as this, where the sufficiency of the notice was in question, it is said: "The law (relating to guardian's sales) would have been free from objection had it simply authorized, upon consent of the court, a sale of the lunatic's property for the payment of his debt." The latter case goes so far as to hold that the notice is not jurisdictional for any purpose. Since the notice is not indispensable to due process of law, it is not, as to the ward at least, process within the meaning of the rules relating to due process. See Price v. Winter, supra; Florentine v. Barton, 2 Wall. (U.S.) 210; 17 L.Ed. 383.
The giving of the statutory notice is jurisdictional in that it is a legal prerequisite to an order of sale, but whether or not it has been given is a question of fact, not one of law. The authority and duty to ascertain and determine that fact is committed to the county judge. Robinson v. Epping, 24 Fla. 237,359; 4 So. R. 812. It is not a decision by the county judge upon his jurisdiction over the subject matter or parties to the proceedings. That the notice has been given is a state of fact which must be established before the county judge may allow the sale. Establishment of that fact depends upon evidence in pais,
the sufficiency of which evidence must be determined by the county judge. When the record of the county judge affirmatively discloses that he considered and decided that question of fact, his judgment thereon is conclusive on collateral attack, unless contradicted by the record of the proceedings for the sale. The question can not be re-litigated collaterally and the finding overcome by evidence aliunde.
The jurisdictional character of the notice here under consideration is the same as that of the citation required by the statute to be published as a prerequisite to the granting to *Page 659 
certain classes of persons of letters of administration. Sec. 5526, C. G. L. 1927. Whether or not the notice of the character here under consideration has been given is a question of fact of the same jurisdictional character as the fact of the existence of assets as a prerequisite to the granting of letters of administration in certain cases (Sec. 5591, C. G. L. 1927); or the fact of the exhaustion or insufficiency of the personal estate as a prerequisite to the allowance of a sale by an administrator of real estate of the decedent. Sec. 5630, C. G. L. 1927.
Robinson v. Epping, supra, was a collateral attack upon the appointment of an administrator which arose in a suit on a bond executed by the administrator's intestate during the latter's lifetime. See Epping v. Robinson, 17 Fla. 36. The jurisdiction of the probate court to make the order granting letters of administration was assailed for several reasons, amongst which are: First, that "it does not legally appear by the records of said county court that the citation required by law was duly published and posted." Second, that the decedent had no assets in the county on which said probate court could grant letters of administration, and that no proper petition had been filed invoking the jurisdiction of the probate court for an adjudication of that question.
To support the questioned order of the probate court, there was introduced in evidence a transcript of the record of the probate proceedings, in which appeared, amongst other things, a copy of a citation, but no proof of publication or posting thereof as required by the statute. The order of the probate judge, however, appearing in the transcript contained the following: "Citation having been published for six weeks as required by law * * * letters of administration have this day been issued * * *."
Upon the first contention made, this court said: "The *Page 660 
order of the county court, granting letters of administration to Tate, appearing in the transcript of the record of the proceedings of that court, as read in evidence, recites that: 'citation having been published for six weeks, as required by law.' This is a distinct adjudication by the County Court that the publication was made for the period of six weeks in the manner required by law. It is not simply an adjudication of a publication for six weeks, but of a publication for such period according to law, or in the two modes of publication prescribed. We cannot on this proceeding inquire as to whether the evidence of such publication justified the conclusion reached, but it is unquestionable that it was the duty and within the jurisdiction of that tribunal to ascertain whether the citation was duly published, and that the question was presented to it and decided by it in the affirmative, and that the fact of such presentation and decision is shown by its records. It is not necessary that its records should recite the modes of publication as detailed in the statute; the language used must be held to judicially ascertain and declare a compliance with them, which is sufficient to show jurisdiction. Gunn v. Howell, 27 Ala. 676. * * * The defence made by this feature of the plea is not sustained and we pass to the other features of the three pleas." The point is thus summarized in the sixth and seventh headnotes; "A statement or recital in the order of the County Court granting administration, of 'citation having been published for six weeks as required by law,' is an adjudication by that court of the fact that a publication had been made of the citation for the period stated in the modes — i. e., in a newspaper and by posting — prescribed by law. Whether or not the testimony before the County Court was sufficient to justify the conclusion *Page 661 
adjudicated, cannot be inquired into in a collateral proceeding." (Italics supplied).
In the fourteenth headnote the court thus summarizes its views upon the second contention: "The fact that the record of the County Court does not affirmatively show that the question of assets had not been presented or considered before the issue or publication of the citation is immaterial. It is sufficient if the record of the court shows upon its face, even at as late a stage of the proceedings as the order for letters to issue, or the final adjudication of administration, that the question was presented to the court and adjudicated affirmatively." In the body of the opinion, the court says with reference to the same matter; "Its purpose was to present to the court the facts it alleges; it was presented to the court to induce its action and the court having acted affirmatively upon it has thereby adjudged it to be sufficient both in form and substance, and being sufficient in substance to make the court's jurisdiction or right to decide upon the case appear upon its records, the correctness of its ruling upon the question of form cannot be raised here any more than can that of the sufficiency of the proof of the averments."
As to the conclusiveness of the judgment of the probate court in these matters, the following view is also stated in Robinson v. Epping: "When the County Court acts upon the petition and grants the letters, the facts alleged are adjudicated upon and its judgment upon these facts is conclusive, except in a direct proceeding to reverse, set aside or annul the order or judgment of the court. And when the record makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was no other or different evidence respecting the *Page 662 
fact. Galpin v. Page, 18 Wall., 366." See also Comstock v. Crawford, 3 Wall. (U.S.) 396; 18 L.Ed. 34.
In a previous appeal in the same case, Epping v. Robinson,21 Fla. 36, this court said: "The judgment granting the letters is generally conclusive as to all matters properly before it, including jurisdictional facts, until reversed or set aside by direct proceedings, (with certain exceptions not material here, see Scott v. McNeal, 154 U.S. 34, 38 L.Ed. 896); and the facts so adjudicated can not be reexamined collaterally." Further in that case it is said: "In the absence of the record of the proceedings in the county court, we must presume from the granting of the letters, that the jurisdictional facts were before the court and that the court found them to be true. The defendant can not now be heard to prove by testimonyaliunde that record that the facts adjudicated by the judgment of the county court were not true * * *." See also Tallman v. McCarty, 11 Wis. 401; Ricketts v. Spraker, 77 Ind. 371, 374; Beauregard v. New Orleans, 18 How. (U.S.) 503; 15 L.Ed. 469; Van Fleet on Collateral Attack, Sec. 61.
In Grignon v. Astor, 2 How. (U.S.) 319, 11 L.Ed. 283, involving an administrator's sale, the court said: "The granting of the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they exist or not is wholly immaterial if no appeal is taken. The rule is the same whether the laws give an appeal or not. If none is given from the final decree, it is conclusive on all whom it concerns. The record is absolute verity to contradict which there can be no averment or evidence. The court having power to make the decree it can be impeached only by fraud in the party who obtains it."
Even if it be that no specific appeal is provided from an order of the character here under consideration, which we do not decide, such an order is at least open to direct attack *Page 663 
by certiorari or by appropriate bill in equity brought for the specific and sole purpose of impeaching the order of sale. See Emerson v. Ross, 17 Fla. 122, 128. By Sec. 11 of Art. V of our Constitution it is provided that the circuit courts "shall have * * * supervision and appellate jurisdiction of matters arising before county judges pertaining to their probate jurisdiction," so that if the county judge committed an error in granting an order of sale, such error could be reviewed and corrected in the circuit court by appropriate direct proceedings by certiorari or other appropriate method. Deans v. Wilcoxon,18 Fla. 531.
The decisions of this court involving administrator's sales of real estate for the payment of debts of the decedent hold that the exhaustion of insufficiency of the personal assets is a jurisdictional fact. Hayes v. McNealy, 16 Fla. 409; Emerson v. Ross, 17 Fla. 122. In Hays v. McNealy, this jurisdictional fact did not appear by the record, and the order of sale was held to be void. In Emerson v. Ross, it appears by recitation in the order of sale and this was held to be sufficient, as it was also in Deans v. Wilcoxon, 18 Fla. 531; idem 25 Fla. 980,1029; 7 So. R. 163.
Emerson v. Ross, 17 Fla. 122, was a collateral attack in an action of ejectment upon the validity of an administrator's deed. It was asserted that the deed was void for several reasons, among others because it was not shown that the personal estate of the decedent had been exhausted as a prerequisite to the sale of the realty. The order of sale made by the probate court contained the following recital: "The administrator having shown to the court that the four weeks' notice has been given files his application for an order to sell certain real estate for the purpose of paying debts and of distribution of the heirs of the deceased, and having shownthat the personal assets are exhausted, it is therefore ordered." With reference to whether the exhaustion of personal assets competently appears, as against collateral *Page 664 
attack, this court, quoting from an Alabama decision, approved the principle that "whether the jurisdictional fact actually existed cannot be collaterally inquired into if the tribunal to whose cognizance the question is referred determined it to exist, but if the record fails to shows the fact, either actually or by the determination of the court, then the basis on which the right to the special remedy rests is wanting and the whole proceeding is void." The conclusion reached in that case is thus stated: "* * * The (probate) court having found that an exhaustion of the personal assets was shown, the sale under the circumstances of this case was not void."
In Sloan v. Sloan, 25 Fla. 53, 5 So. R. 603, another case involving the validity of an administrator's sale in which it did not appear that the personal assets had been exhausted, this court in discussing the case of Hays v. McNealy, 16 Fla. 409, which it followed in the Sloan decision, said with reference to the effect of a finding that the personal assets had been exhausted: "If it appeared to have been presented, the order of sale would be an adjudication of the fact and conclusive against any collateral attack upon the jurisdiction." Further in the same case this court said: "If the record of the county court of Marion showed that the fact of the exhaustion of the personal estate of William Sloan (the decedent) had been presented to the county judge the order of sale would be an affirmative adjudication of the existence of such fact, and such an adjudication would be conclusive against any collateral attack. Epping v. Robinson, 21 Fla. 36." The sale involved in Sloan v. Sloan was held void because there was nothing in the record of the administrator's sale presenting or adjudicating the question of the exhaustion of personal estate. See also Florentine v. Barton, 2 Wall. (U.S.) 210,17 L.Ed. 783; Grignon's Lessee v. Astor, 2 How. (U.S.) 319,11 L.Ed. 283; Comstock v. Crawford, 3 Wall. (U.S.) 396; 18 L.Ed. 34. *Page 665 
In Bowden v. Jacksonville Electric Co., 51 Fla. 152, 41 So. R. 400, it was held that the regularity of an order of the county judge granting letters of administration upon the estate of a deceased minor is not subject to collateral attack.
This court has also held that an order of a county judge removing an administrator is immune from collateral attack (see Hart v. Bostwick, 14 Fla. 162; Simpson v. Gonzales, 15 Fla. 9); and the same has been held of an order of a county judge revoking letters of administration. Mathews v. Durkee, 34 Fla. 559, 16 So. R. 411. In Torrey v. Bruner, 60 Fla. 365, 53 So. R. 337, it was held that when the jurisdictional fact of residence of the deceased had been duly found in a proceeding to probate a will, the question could not be re-litigated collaterally.
To return again to the facts of the case now before us. General jurisdiction to order a sale of the real estate of lunatics is committed to the county judge by constitution and statute. As a prerequisite to the exercise of that jurisdiction, the statute requires the publication of the notice in question. Who is to decide whether or not the notice has been given? The county judge. In this case, the jurisdiction of the county judge upon the matter was invoked by the following allegation in the guardian's petition: "Your petitioner would further represent that he has published for the space of thirty days in the Tampa Times, a newspaper published in said county situate nearest to the land asked to be sold, a notice of this application for the sale of the said insane person's property, above described." The purpose of the guardian's petition to sell was to present to the court the facts it alleges, including the fact that notice had been previously published as required by law, and to invoke the court's jurisdiction and induce its action upon those facts. The petition required the county judge to *Page 666 
investigate every allegation contained therein and to adjudicate upon the same.
In the order of sale the fact that notice had been given was adjudicated by the county judge as follows: "It further appearing that due notice by publication of the intention to make this application has been made by the petitioner, * * *." The statute in force at the time required the notice to be published "once each week for four weeks," while the petition avers that it was published "for the space of thirty days." The required publication for four consecutive weeks, however, could have been made "within the space of thirty days." Parenthetically, it may be remarked that the proof of publication which plaintiff offered in evidence showed that the notice in question was published in the Tampa Times on September 2d 9th, 16th, 23rd and 30th, 1899. The deficiency relied on by plaintiff is that while the notice was returnable to October 1, 1899, the petition for leave to sell was not filed before the county judge until October 5, 1899.
It affirmatively appears by the record, therefore, that the county judge decided the sufficiency of the proof of the fact that the guardian's notice had been published, and there was then a solemn ascertainment and adjudication by the county judge that "due notice by publication of the intention to make this application has been made by the petitioner." Nothing appears by the record of the county judge to impeach that judgment or to show that the fact therein found was not or could not be true. That judgment has never been brought in question by any direct attack. An erroneous decision in that regard is subject to review upon direct attack by certiorari or other appropriate method, but it does not render the judgment void, and under all the circumstances just stated it is conclusive when questioned by collateral attack. *Page 667 
The county judge, with jurisdiction over the person and subject matter, having affirmatively adjudicated the fact that such notice had been given and nothing appearing in the record to the contrary of that finding, that question, and the sufficiency of the evidence to sustain the finding, is no more open to re-investigation or re-litigation on collateral attack
than any other question competently decided in the matter. If that question can be opened up and re-litigated in a collateral proceeding, and the finding of fact can be overcome by evidencealiunde, then any other question of fact can be similarly treated. If the adjudication by the county judge that the notice was given can be opened up and re-litigated collaterally, the stability of such an order is fatally impaired, and there can be no security to a purchaser at such a sale. Price v. Winter, 15 Fla. 66, text 105; Florentine v. Barton, supra; Landford v. Dunklin, 71 Ala. 594; Howard v. Landsberg's Committee, 60 So. E. R. 767; Kelly v. Morrell, 29 Fed. 736; Grignon v. Astor, 2 How. (U.S.) 319; 11 L.Ed. 283; Berrian v. Rodgers, 43 Fed. 467; Phillips v. Phillips, 83 N.W. R. 95; Eaves v. Mullen, 107 Pac. R. 433; Spade v. Morton, 114 Pac. R. 724; Pullan v. Kinsinger, 2 Abbott (U.S.) 94; Ryan v. Ferguson, 28 Pac. R. 910; Spring Creek Drg. Dist. v. Comrs. of Highways, 87 N.E. R. 394; Lingo v. Burford, 20 S.W. R. 459; Barnes v. Brownlee, 155 Pac. R. 962; Letcher v. Alexander,41 Ala. 39; Beauregard v. New Orleans, 18 How. (U.S.) 497;15 L.Ed. 469; Thompson v. Tomlie, 2 Pet. (U.S.) 157; 7 L.Ed. 381; Clark v. Rossier, 10 Idaho 348; 3 Am. Eng. Cas. 231. See also U.S. v. Arredondo, 6 Pet. 709; 8 L.Ed. 547; 1 Black Jdgts. (2nd. Ed.) 245, 246; Van Fleet, Collateral Attack, Sects. 1, 16, 17, 19.
The trial judge therefore did not err in holding that *Page 668 
for purposes of consideration on collateral attack the affirmative finding of the county judge that notice had been duly given was sufficient to support the order of sale, and that such finding by the county judge could not be impeachedcollaterally by evidence aliunde the record.
Plaintiff next contends that the guardian's sale is void because no additional bond, conditioned to duly account for the proceeds of same according to law, was given by the guardian as mandatorily required by the statute then in force. Plaintiff contends that the court erred in admitting in evidence the bond that was given, because such bond is not conditioned as required by the statute.
The statutes bearing on this question which were in force when the sale was made were Secs. 1924, 1925, and 2100, Rev. Stats. 1892. These statutes taken together mandatorily require the county judge in every order or decree authorizing such a sale as this to require the guardian to give an additional bond "conditioned to duly account for same (the proceeds of the sale) according to law." In the order of sale in this case no such requirement appeared, but in the order confirming the sale the following recital appears: "And it further appearing to the satisfaction of the court that the said sales were made in accordance with law and the amount sold for, and the price obtained for said property, was fair and adequate, 'and the said guardian having given an additional bond conditioned to duly account for the proceeds of said sale as required by law'; it is therefore ordered" etc., that the sales be approved and confirmed.
On October 7, 1899, the date that the sales were approved, it affirmatively appears that there was presented and expressly approved by the then county judge a bond in the penal sum of one hundred dollars, executed by the *Page 669 
then guardian, and two sureties. The bond, however, is not conditioned in haec verba as required by the statute, but is conditioned that the guardian "shall, faithfully preserve the estate of said insane person" and shall render annual accounts during the continuance of the guardianship, of its profits and disbursements, and shall "deliver or pay to such person or persons respectively as the said court, by its order and decree, shall appoint and direct; * * *."
To support this contention plaintiff relies upon Wilkins v. Deen Turp. Co., 84 Fla. 457, 94 So. R. 508, in which it was held on collateral attack upon such a sale as this that the failure of the court to require by the order or decree authorizing such sale the guardian to execute and file in the court the conditioned bond which the statute commands for the protection of the minors whose property was being sold, "is such a material departure from the proceeding authorized as to render its action nugatory." The requirement for giving the additional bond now under consideration has been modified subsequent to the sale here in question. See McCamy v. Payne,94 Fla. 210, 116 So. R. 267.
In the case of Wilkins v. Deen Turp. Co., supra, it appears, and the decision therein is expressly postulated upon the fact that "the order authorizing the sale and appointing a commissioner to make deeds to the purchasers contains no such provision (requiring an additional bond) and no bond appears to have been given." The facts of this case, as disclosed by the record of the county judge's court, differ essentially from the facts in the Wilkins case. It is true that the order allowing the sale in this case did not contain the necessary requirements for an additional bond, but the order confirming the sale finds that such additional bond was given. It affirmatively *Page 670 
appears by the record that an additional bond was in fact actually given by the guardian at the time this sale was confirmed and before the deed had been executed or the proceeds received. By the bond itself, however, which can be looked to notwithstanding the finding of the county judge in the order confirming the sale because the bond itself appears upon the record of the proceeding in the county judge's court, it appears that the condition did not follow the words of the statute in haec verba, but the condition appearing in the bond necessarily embraces the condition contemplated by the statute, the condition actually appearing in the bond being broader and more comprehensive than that required by the statute. These facts clearly distinguish this case from the Wilkins case,supra. The condition of this bond as given fully protects the interests of the ward, which is all that the statute contemplates.
Neither is this a case in which the former ward sues in her own right to disaffirm the sale after emancipation from disability, as was the situation in the Wilkins case,supra. This ward still remains insane. This action is by a guardian who has succeeded the original guardian who made the sale. The second guardian, who occupies identically the same capacity as the former guardian, seeks to overthrow the sale for an alleged omission on the part of his predecessor, who petitioned for and who made the sale.
There is no charge of fraud, or even of mismanagement or failure to account on the part of the guardian with respect to the proceeds of this sale, or as to the ward's estate generally. It is not asserted that the property when sold did not bring a fair price, nor that the sale was not fairly made. This plaintiff relies solely on the bare sic dixit lex of the statute. *Page 671 
If the point was raised in a direct proceeding it would be considered in an altogether different aspect. When the proceedings of a court of competent jurisdiction are brought before another court collaterally, they are by no means subject to all the exceptions which might be taken to them on direct attack. Thompson v. Tomlie, supra. On this collateral attack instituted by a successor who stands in the shoes of the original guardian, the sale will not be held void, it affirmatively appearing that the court had jurisdiction and that a bond was in fact given which, although it did not track the words of the statute, nevertheless in legal effect embraced the condition required thereby, no fraud or mismanagement being charged. That situation might have presented a case of error available on direct attack, but it does not render the sale void. See Kelley v. Morrell, 29 Fed. 736.
The original judgment of this court reversing the judgment of the trial court is hereby vacated, and the judgment of the trial court is hereby affirmed.
TERRELL, C. J., AND WHITFIELD, ELLIS AND BROWN, J. J., concur.
Buford, J., dissents.
 ON SECOND RE-HEARING Opinion filed December 2, 1929.